[THE STATE EX REL.] ERIEVIEW METAL TREATING COMPANY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Erieview Metal Treating Co. v. Indus. Comm.*, 109 Ohio St.3d 147, 2006-Ohio-2036.]

(No. 2005–0733—Submitted November 29, 2005—Decided May 10, 2006.)

**Per Curiam.**

{¶ 1} Michael T. Yakopovich Sr. worked for appellant, Erieview Metal Treating Company, during the late 1970s through the mid–1980s. On the job, he was exposed to chemical and paint fumes. In 1986, Yakopovich developed wheezing, coughing, and shortness of breath while working for Erieview. Occupational asthma was diagnosed, and a workers' compensation claim was allowed for that condition.

{¶ 2} After Yakopovich left Erieview, he worked assorted jobs for several years. In approximately 1997, he began working as a baker with Meijer, Inc. Within a year, he began to experience wheezing, shortness of breath, and coughing from his exposure to flour dust. A workers' compensation claim was allowed against Meijer for "aggravation of pre-existing occupational asthma."

{¶ 3} Yakopovich left Meijer due to his respiratory condition and has not worked since 1998. Yakopovich was paid compensation for temporary total disability thereafter, all of which was attributed to—and paid in—the Erieview claim. Those payment orders have long since become final.

{¶ 4} On May 14, 2003, Yakopovich moved appellee Industrial Commission of Ohio for compensation for permanent total disability compensation. Six months later, the commission granted that motion and assessed all of the award to the Erieview claim, writing:

{¶ 5} "It is further ordered that the above award be allocated as follows: 100% of the award is to be paid under Claim Number OD1987[9]1 [the Erieview claim]. This Staff Hearing Officer finds that although the 1997 claim was an aggravation of the original claim, all disability compensation has been paid in the original occupational disease claim, based upon a previous finding by the Industrial Commission. Therefore, it is in fact the original occupational disease which renders the injured worker unable to perform sustained remunerative employment."

{¶ 6} Erieview filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in assessing the cost of the claim to Erieview and not Meijer. The court of appeals disagreed and denied the writ.

{¶ 7} This cause is now before this court on an appeal as of right.

{¶ 8} In assigning the whole cost of the permanent total disability award to Erieview, the commission relied on the fact that all of the disability compensation for Yakopovich's occupational disease had been paid in the Erieview claim. The issue now before us is whether that evidence is sufficient to support the commission's order. We hold that it is.

{¶ 9} Erieview's reliance on the "last injurious exposure" theory is misplaced. Thus far, this theory has appeared before Ohio courts in just one context: before allowance of a claim, in a situation involving several potentially liable employers. It usually involves a worker who has recently experienced the onset of a long-latency occupational disease such as asbestosis or black lung. It always involves a worker who has been exposed to the injurious substance while working for each of several employers. When that worker files a workers' compensation claim, a question arises: When multiple employers have subjected the worker to the hazard, against which employer should the workers' compensation claim be allowed?

{¶ 10} The difficulties inherent in this inquiry are obvious. A long-latency occupational disease can take decades to emerge. Once it has, it is often impossible to go back over the years to quantify the amount of exposure at each job or to pinpoint which exposure planted the seeds of eventual disease. These obstacles inspired the last-injurious-exposure concept, which subordinates the practically unattainable scientific accuracy to the next best thing—consistency. As the name indicates, the employer providing the last injurious exposure will be the one against which the workers' compensation claim is allowed.

{¶ 11} This case does not involve the initial allowance of a workers' compensation claim. This difference immediately distinguishes it from all other cases citing the rule, including *Birchfield v. Rubbermaid, Inc.*, Wayne App. Nos. 03CA0069 and 04CA0006, 2004-Ohio-4573, 2004 WL 1933123, on which Erieview heavily relies. The question, of course, remains as to whether the last-injurious-exposure principle should be extended to this situation nevertheless, and upon consideration, we find that it should not. Here, it is possible to determine with some degree of accuracy which exposure was responsible for Yakopovich's disability. Substantial disability compensation has been paid in the Erieview claim, as opposed to none in the Meijer claim. There is, therefore, no reason to resort to the last-injurious-exposure theory.

{¶ 12} Erieview next asserts that although all the compensation was attributed to the claim involving Erieview, Yakopovich missed no time from work until after he started working for Meijer. There is no evidence to support this assertion. In any event, Yakopovich's ability to continue working at Erieview is ultimately inconsequential, given the commission's attribution of the disability to the occupational disease contracted during employment with Erieview in orders *that are now final*. The fact remains that all prior disability compensation arising from Yakopovich's occupational disease has been causally related to the Erieview claim, and it was therefore not an abuse of discretion for the commission to find that continued disability was attributable to that same cause.

{¶ 13} Erieview's reliance on *State ex rel. Swigart v. Chrysler Corp.* (1982), 8 Ohio App.3d 84, 8 OBR 117, 455 N.E.2d 1349, does not further its cause. *Swigart* held that when permanent and total disability results from an industrial injury aggravating a preexisting condition for which a claim has been previously allowed, the permanent and total disability should be allocated entirely to the second claim in the absence of evidence supporting allocation to the earlier claim.

{¶ 14} The final condition is key. In the instant case, there *is* evidence supporting allocation of the disability to the earlier claim: all compensation and benefits have been paid in the first claim, with none in the Meijer claim. *Swigart*, therefore, does not apply.

{¶ 15} Accordingly, we hold that the commission did not abuse its discretion in assessing all of Yakopovich's permanent total disability award to Erieview. All disability thus far has been attributed to Yakopovich's employment with Erieview. Evidence, as well as logic, supports the conclusion that permanent total disability emanates from the same cause.

{¶ 16} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, O'CONNOR and O'DONNELL, JJ., concur.

LUNDBERG STRATTON and LANZINGER, JJ., dissent.

---

**LANZINGER, J., dissenting.**

{¶ 17} This appeal concerns the proper allocation between two employers of the costs of an award to a former employee for permanent and total disability. Compensation for permanent and total disability is a guaranteed weekly amount, payable to the employee for life. R.C. 4123.58. I cannot agree that the first employer that pays disability compensation should be assessed 100 percent of an award for permanent total disability when other employment follows the first claim, and so I respectfully dissent.

{¶ 18} Yakopovich's claim history with the Bureau of Workers' Compensation includes a linear fracture in the right foot in 1979 (79–21980), occupational asthma in 1986 (OD198791), an injury to his low back, also in 1986 (46320–27), and an aggravation of pre-existing occupational asthma in 1997 (97–594482). The 1986 claims arose during Yakopovich's employment with Erieview. The 1997 claim stems from his employment with Meijer.

{¶ 19} After the Meijer claim of aggravation was allowed, Yakopovich received compensation for temporary total disability from September 23, 1997, through August 30, 2002, which was assessed against Erieview, in orders that have become final. It appears that the staff hearing officer allocated 100 percent of the compensation for temporary total disability to Erieview because claim No. OD198791 had remained open and active on an ongoing basis, with treatments authorized as late as March 1, 1997, and May 27, 1997, and warrants for compensation for temporary total disability had previously been issued, although not negotiated. Also, the staff hearing officer based the order on pulmonary function tests that took place in 1997, before the date of injury on the Meijer aggravation claim. Yet now, because of the significant payment that was assigned to its claim, in contrast to nothing being assigned to the Meijer claim, Erieview is charged with 100 percent of the award for permanent total disability.

{¶ 20} Unlike the award for temporary total disability, Erieview's cost allocation of 100 percent of the award for permanent total disability did not arise from any medical reports. The staff hearing officer stated: "[A]lthough the 1997 claim was an aggravation of the original claim, all disability compensation has been paid in the original occupational disease claim, based upon a previous finding by the Industrial Commission. Therefore, *it is in fact* the original occupational disease which renders the injured worker unable to perform sustained remunerative employment." (Emphasis added.)

{¶ 21} In affirming this order, the majority finds the evidence of the payment history between the two employers to be sufficient to support the 100 percent assessment against Erieview. That is, Erieview already was assessed all of the benefit payment for the occupational disease of asthma. Although the Meijer claim was an aggravation of that disease, the staff hearing officer apparently did not consider how the second claim may have played a role in Yakopovich's reaching maximum medical improvement, thereby making his condition permanent.

{¶ 22} By rejecting application of the "last injurious exposure" rule, the majority ignores the point of the award for permanent total disability. Erieview contends that the court of appeals erred by not applying the law set forth in *State ex rel. Hall China Co. v. Indus. Comm.* (1962), 120 Ohio App. 374, 29 O.O.2d 241, 202 N.E.2d 628, affirmed (1964), 176 Ohio St. 349, 27 O.O.2d 304, 199 N.E.2d 739. In *State ex rel. Burnett v. Indus. Comm.* (1983), 6 Ohio St.3d 266, 268, 6 OBR 332, 452 N.E.2d 1341, a case dealing with an occupational-disease claim for asbestosis, we adopted the *Hall China* holding, stating: "[P]roof of [injurious] exposure with the last employer [is] a sufficient basis for the award even though other employments may have contributed to the occupational disease."

{¶ 23} I cannot agree with the majority that the history of compensation and other benefits alone is sufficient evidence upon which to allocate 100 percent of the cost of an award for permanent and total disability. I therefore respectfully dissent and would grant a writ of mandamus directing the commission to vacate its order and reallocate the costs of the permanent and total disability award.

LUNDBERG STRATTON, J., concurs in the foregoing dissenting opinion.

———

Mansour, Gavin, Gerlack & Manos Co., L.P.A., John F. Burke III, and Amy L. Phillips, for appellant.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for appellee Industrial Commission.

Charles J. Gallo Co., L.P.A., and Charles J. Gallo Jr.; Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee Michael Yakopovich Sr.