DECISION
{¶ 1} Relator, The Ohio State University ("OSU"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 2 
Commission of Ohio ("commission"), to vacate its order that granted temporary total disability ("TTD") compensation to respondent and ordering the commission to find that Carl E. Thomas, respondent-claimant, is not entitled to that compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court grant OSU's writ of mandamus. (Attached as Appendix A.) The commission has filed objections to the magistrate's decision.
 {¶ 3} The commission first argues that the magistrate erred when she granted OSU's writ of mandamus based upon the determination that Dr. Alton Ball's June 27, 2006 C-84 was not some evidence for an award of ongoing TTD compensation. The commission maintains that the issue before the commission, and the sole issue before the magistrate, was not whether there was some evidence to support an award of ongoing TTD, but whether TTD should be terminated based upon the claimant reaching maximum medical improvement ("MMI"). The commission points out that the magistrate never determined that the commission abused its discretion in finding claimant had not reached MMI. We agree with the commission's contentions and find the magistrate erred in granting OSU's writ of mandamus. The issue before the magistrate was whether there was some evidence that claimant had not yet reached MMI. In her decision, the magistrate never addressed whether the claimant had reached MMI, instead determining the matter based upon whether Dr. Ball's C-84 was some evidence of an award of ongoing TTD compensation, an issue that was not raised by OSU in its brief in mandamus or before the commission in its filings. The failure to raise an issue before the *Page 3 
commission or the magistrate waives the issue in a mandamus action. See, e.g., State ex rel. Bays v. Indus. Comm., Franklin App. No. 03AP-424,2004-Ohio-2944, at ¶ 4. Having addressed an error not raised on mandamus while failing to address the pertinent issue raised by OSU, the magistrate erred.
 {¶ 4} We have independently reviewed the record, and we find there was some evidence to support the commission's order that claimant had not yet reached MMI. In support of its motion to terminate TTD compensation, the Bureau of Workers' Compensation ("BWC") relied upon the March 16, 2006 report of Dr. Christopher D. Holzaepfel, who opined claimant's allowed conditions had reached MMI. However, Dr. Holzaepfel's report was issued after the order granting the additional allowance of aggravation of adjacent level stenosis at L3-L4 was issued. Thus, we agree with the commission that Dr. Holzaepfel's report cannot support the BWC's motion to terminate TTD.
 {¶ 5} Further, although the magistrate is correct in reasoning that an authorization to receive an additional three epidurals is not conclusive of whether the claimant had reached MMI, the commission made a determination that the three additional epidurals demonstrated that the claimant had not reached MMI. OSU presents no compelling reason why we should disturb the discretion of the commission's interpretation of the medical evidence in this respect. When evidence is susceptible of differing interpretations as to MMI, the commission does not abuse its discretion in selecting one interpretation over the other. State ex rel.Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238. The commission interpreted the evidence of the epidurals to signify claimant's condition had not attained MMI. We find this interpretation to be within the commission's *Page 4 
prerogative. See State ex rel. Value City Dept. Stores v. Indus.Comm., 97 Ohio St.3d 187, 2002-Ohio-5810, at ¶ 20 (the commission's interpretation that certain evidence demonstrated claimant's condition had not attained MMI was within the commission's prerogative). In addition, that the commission chose not to rely upon Dr. Stephen Woods' opinion that claimant had reached MMI was likewise within its discretion. The commission is the sole evaluator of evidentiary weight and credibility. State ex rel. Dobbins v. Indus. Comm.,109 Ohio St.3d 235, 2006-Ohio-2286, at ¶ 8, citing State ex rel. Burley v. CoilPacking, Inc. (1987), 31 Ohio St.3d 18. Therefore, we find there was some evidence to support the commission's order finding claimant had not reached MMI. For these reasons, the commission's objections are sustained.
 {¶ 6} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of the commission's objections, we sustain the objections. Accordingly, although we adopt the magistrate's decision as our own with regard to the findings of fact, we do not adopt the conclusions of law based upon the reasoning set forth above. Therefore, we deny OSU's request for a writ of mandamus.
Objections sustained; writ of mandamus denied.
 BRYANT and TYACK, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} Relator, The Ohio State University ("OSU"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which awarded temporary total *Page 6 
disability ("TTD") compensation to respondent Carl E. Thomas ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact: {¶ 8} 1. Claimant sustained a work-related injury on April 15, 2005, and his claim was originally allowed for "sprain lumbar region; closed fracture lumbar vertebra." Claimant began receiving TTD compensation.
 {¶ 9} 2. In February 2006, claimant filed a motion requesting that his claim be additionally allowed for "aggravation of adjacent level stenosis at L3-L4."
 {¶ 10} 3. Claimant had been examined by Gary L. Rea, M.D., who issued reports in July 2005 and May 2006. In his May 2006 report, Dr. Rea reviewed a myelogram/CT scan which indicated moderate stenosis at L3-L4. Dr. Rea discussed surgery options with claimant who indicated, at that time, he was not ready to have surgery. Dr. Rea opined that over time claimant's condition would worsen to the point where he would be ready to have surgery.
 {¶ 11} 4. Claimant was also examined by Stephen T. Woods, M.D., who opined that claimant had the following additional problems with his back: "aggravation of degenerative disc disease, stenosis and prior fusion site with chronic bilateral L5 radiculopathies." Dr. Woods recommended that claimant continue with his home exercise program and medication management and that he follow-up with Drs. Gabriel and Rea. He further suggested that claimant be given a TENS unit to further minimize his medication. Dr. Woods indicated that he did not believe claimant was ready for epidurals at this time; however, he opined that claimant eventually would and recommended no more than four epidurals during a six-month period. *Page 7 
 {¶ 12} 5. Claimant's motion requesting that his claim be additionally allowed was heard before a district hearing officer ("DHO") on March 22, 2006, and resulted in an order granting the following additional allowance: "aggravation of adjacent level stenosis at L3-L4." The DHO relied upon reports from Drs. Gabriel, Rea and Woods, a January 2006 C-9 of Dr. Alton J. Ball, M.D., an August 5, 2005 MRI, and claimant's testimony.
 {¶ 13} 6. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on May 2, 2006, and resulted in an order affirming the prior DHO's order and allowing claimant's claim for the additional requested conditions.
 {¶ 14} 7. Relator's treating physician, Dr. Ball, completed an OSU Occupational Medicine Progress Note on May 26, 2006. Based upon the allowed conditions, Dr. Ball noted that claimant's condition remained the same and that claimant did not want surgery, but wanted to try a course of epidural steroids.
 {¶ 15} 8. Sometime in May 2006, Dr. Ball filed a C-9 form requesting additional spinal epidurals. This request was approved by the relator May 30, 2006.
 {¶ 16} 9. In April 2006, the Ohio Bureau of Workers' Compensation ("BWC") filed a motion requesting that claimant's TTD compensation be terminated. This motion was supported by the March 16, 2006 report of Christopher D. Holzaepfel, M.D., who, after examining claimant, determined that his allowed conditions had reached maximum medical improvement ("MMI"). Dr. Holzaepfel did note that claimant would be unable to return to his former position of employment, but that he could perform sedentary work with no more than 15 to 20 minutes of standing at a time. Claimant would also have a five-pound lifting restriction and no stooping, squatting, bending or twisting activities. *Page 8 
 {¶ 17} 10. On June 2, 2006, a DHO heard the BWC's motion to terminate claimant's TTD compensation. The DHO determined that the allowed conditions, which included the newly allowed conditions, had not reached MMI. The DHO based this upon the fact that new conditions had been allowed, authorization had been granted for epidurals and the reports of Drs. Ball, Wood and Rea. The DHO determined that Dr. Holzaepfel's report did not constitute some evidence as Dr. Holzaepfel did not consider the L3-L4 stenosis.
 {¶ 18} 11. On June 27, 2006, Dr. Ball signed a C-84 certifying that claimant was temporarily and totally disabled from July 31, 2006 though an estimated return-to-work date of September 11, 2006. Dr. Ball only listed ICD codes indicating which allowed conditions were preventing claimant from returning to work. The two ICD codes listed by Dr. Ball corresponded solely to the two originally allowed conditions. ICD code 847.2 refers to the lumbar sprain while ICD code 805.4 refers to fracture of the lumbar vertebra. Dr. Ball referenced his clinic notes wherein he noted that claimant presented for a follow-up exam concerning his lumbar sprain, closed fracture lumbar vertebra and spinal stenosis. He indicated that claimant was to see Dr. Woods for a series of epidurals and that surgery was not recommended at this time.
 {¶ 19} 12. Relator's appeal from the June 2, 2006 DHO's order denying the BWC's motion to terminate claimant's TTD compensation was heard before an SHO on July 17, 2006. The SHO issued an interlocutory order taking the issue under advisement.
 {¶ 20} 13. Thereafter, in an order mailed August 22, 2006, the SHO affirmed the DHO's order from the hearing dated June 2, 2006, and denied the motion of the BWC to terminate TTD compensation. Based upon the fact that new conditions had been allowed *Page 9 
and epidurals had been authorized, the SHO found that claimant's condition had not reached MMI. Further, based upon the June 27, 2006 C-84 of Dr. Ball, the SHO ordered that TTD compensation should be continued and paid in accordance with the medical evidence submitted. The SHO specifically rejected the report of Dr. Holzaepfel because he did not consider the condition of L3-L4 stenosis and found that the report of Dr. Woods was internally inconsistent because he indicated that claimant had reached MMI and yet provided a treatment plan for reaching MMI.
 {¶ 21} 14. Relator appealed asserting that the SHO had misread Dr. Woods' report, that allowance of additional conditions does not necessarily mean that claimant had not reached MMI since it was agreed that continuing care was necessary to maintain his current level of functioning, and relator submitted additional evidence. That additional evidence consisted of a fax dated July 17, 2006, sent to Dr. Ball. Dr. Ball was asked whether or not he agreed with Dr. Woods' statement that claimant had reached MMI and, it appears that Dr. Ball wrote in response "I agree" and provided his initials by his handwriting.
 {¶ 22} 15. By order mailed September 15, 2006, the commission refused relator's appeal.
 {¶ 23} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 24} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought *Page 10 
and that the commission has a clear legal duty to provide such relief.State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v.Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.State ex rel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 25} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus referring the matter back to the commission for further proceedings.
 {¶ 26} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A);State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 27} It is undisputed that, in any motion for compensation, treatment or other benefit, the claimant has the burden of proving that there is a proximate causal *Page 11 
relationship between his work-related injuries and disability, and to produce medical evidence to this effect. See, i.e., State ex rel. QuartoMining Co. v. Foreman (1997), 79 Ohio St.3d 78.
 {¶ 28} As noted in the findings of fact, the BWC's motion to terminate claimant's TTD compensation was denied because the commission found that claimant's allowed conditions had not reached MMI; he recently had additional conditions allowed in his claim; and had recently received authorization for three epidural steroid injections. Further, TTD compensation was ordered paid in accordance with the medical evidence submitted by Dr. Ball, specifically his June 27, 2006 C-84. However, as noted in the findings of fact, Dr. Ball only listed the originally allowed conditions of sprain lumbar region and closed fracture lumbar vertebra as the conditions which were rendering claimant disabled. Dr. Ball did not certify TTD compensation based upon the newly allowed conditions. The magistrate noted this at oral argument and pointed out that there was a second C-84 filed as part of a supplemental stipulation of evidence.
 {¶ 29} Because the parties had not specifically addressed this issue, the magistrate provided them the chance to file briefs in response. Although the commission concedes that the June 27, 2006 C-84, standing alone, is inadequate, the commission argues that this court has no authority to sua sponte raise an issue the parties failed to raise. In the present case, the commission cited one document upon which it relied to grant the requested compensation: Dr. Ball's June 27, 2006 C-84. If, upon review, the magistrate finds that the C-84 does not constitute "some evidence" upon which the commission could rely, the magistrate can certainly find that the commission's order is not supported by "some evidence." *Page 12 
 {¶ 30} However, the commission argues that in the original C-84, Dr. Ball referenced his clinic notes and, by implication, the OSU Occupational Medicine Progress Note as well. Although Dr. Ball's clinic notes reference the new condition, Dr. Ball did not indicate any disability arising from it. There are two OSU Occupational Medicine Progress Notes in the file. In the first, dated May 26, 2006, Dr. Ball listed the first two allowed conditions, indicated that claimant's condition remained the same, and that claimant wanted to try a course of epidural steroids. In the second, dated June 27, 2006, Dr. Ball listed all the allowed conditions and indicated that claimant's condition remained the same. Both forms referenced an undated C-84. The commission argues that the clinic notes and progress notes demonstrate that Dr. Ball was aware of the newly allowed condition and that he obviously based his certification of TTD compensation on all three conditions. However, the magistrate does not concur with the commission's argument that Dr. Ball clearly meant to include all three conditions on the C-84. Neither his clinic notes nor the progress notes indicate any disability arising from the allowed conditions. As such, the magistrate finds that Dr. Ball's C-84 and referenced materials do not constitute some evidence for an award of ongoing TTD compensation. Further, because there is some evidence in the record upon which the commission could rely to find that the originally allowed conditions had actually reached MMI (Dr. Holzaepfel's report), and because the report of Dr. Holzaepfel was only rejected because he did not consider the newly allowed conditions, the magistrate finds that the commission has abused its discretion and this matter must be returned for further consideration. *Page 13 
 {¶ 31} In addition, the fact that new conditions had been allowed in claimant's claim and further treatment had been authorized, does not necessarily, on its own, constitute grounds for granting an award of TTD compensation. MMI is defined as:
 * * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.
 {¶ 32} As such, the magistrate finds that this rationale of the commission does not stand on its own when Dr. Ball's C-84 is removed from evidentiary consideration because his certification of TTD compensation was based solely on the first two originally allowed conditions.
 {¶ 33} Based on the foregoing, it is this magistrate's conclusion that this court should issue a writ of mandamus ordering the commission to vacate its order awarding claimant TTD compensation. The commission should redetermine this issue after removing Dr. Ball's June 27, 2006 C-84 from evidentiary consideration and with or without obtaining additional medical evidence from either claimant or relator as the commission, in its discretion, deems necessary. *Page 1