[Cite as *State ex rel. Penske Truck Leasing Co., L.P. v. Indus. Comm.*, 2017-Ohio-1119.]

# IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Penske Truck Leasing Company, LP, | : | |
| | : | |
| Relator, | : | |
| | : | No. 15AP-223 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, Deborah J. Fizer, and TQ Logistics, | : | |
| | : | |
| Respondents. | : | |

## D E C I S I O N

### Rendered on March 28, 2017

**On brief:** *Scheuer Mackin & Breslin, LLC, J. Kent Breslin,* and *Eric A. Rich,* for relator. **Argued:** *J. Kent Breslin.*

**On brief:** *Michael DeWine,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio. **Argued:** *Natalie J. Tackett.*

**On brief:** *Boyd, Rummell, Carach, Curry, Kaufman & Bins-Castronovo Co., L.P.A.* and *Randall Rummell,* for respondent Deborah J. Fizer.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Penske Truck Leasing Company, LP ("Penske" or "relator"), has filed an original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the portion of its order that allocates 13 percent of an award of permanent total disability ("PTD") compensation to claim No. 04-800300 and 9 percent of the award to claim No. 01-

865473, and to enter an amended order that allocates the entire PTD award to claim No. 07-350194.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this court referred the matter to a magistrate, who rendered the appended decision including findings of facts and conclusions of law. The magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate that part of the January 21, 2015 order of its staff hearing officer ("SHO") that allocates the PTD award among the three industrial claims and to enter an amended order.

{¶ 3} The commission has filed objections to the magistrate's decision, arguing that the magistrate erred in: (1) exceeding the scope of review in finding the commission abused its discretion by relying in part on the report of Marian Chatterjee, Ph.D., to support an allocation of the PTD award to claim No. 07-350194, (2) improperly re-weighing the evidence to find there was no evidence in the report of Dr. Jess G. Bond to support the allocation of 9 percent of the PTD award to claim No. 01-865473, and (3) finding the commission abused its discretion in allocating 13 percent of the PTD award to claim No. 04-800300. Penske also filed an objection to the magistrate's decision in which it essentially agrees with the commission's first objection that the magistrate exceeded the scope of review in finding the commission abused its discretion by relying on the report of Dr. Chatterjee to support an allocation of the PTD award to claim No. 07-350194.

{¶ 4} The facts of this case, which are more fully set forth in the magistrate's decision, indicate that, on November 10, 2001, respondent Deborah J. Fizer ("claimant") sustained an injury while employed as a truck driver for Penske. The commission subsequently assigned claim No. 01-865473 (hereafter "the 2001 claim") for the condition "cervical strain." On January 2, 2004, claimant sustained a second industrial injury while employed as a truck driver for Penske, and the commission assigned claim No. 04-800300 (hereafter "the 2004 claim") for the conditions "lumbosacral sprain/strain; left rotator cuff sprain/strain, adhesive capsulitis left shoulder." On June 20, 2007, claimant sustained an industrial injury while employed as a truck driver with a subsequent employer, TQ Logistics. The commission assigned claim No. 07-350194 (hereafter "the 2007 claim") for the conditions "sprain of neck; sprain left shoulder; disc bulge with compression at the C5 through C7 disc levels; recurrent depressive psychosis-severe."

{¶ 5}   On January 3, 2014, claimant filed an application for PTD compensation. On August 8, 2014, claimant, at the commission's request, was examined by Dr. Bond with respect to all of the allowed physical conditions of the three industrial claims.  Dr. Bond issued a report opining that claimant had a "34% whole person impairment rating for all of the allowed conditions of these claims."   Dr. Bond further determined that claimant was capable of performing sedentary work.

{¶ 6}   In August 2014, Dr. Chatterjee examined claimant for the allowed psychological claim in the 2007 industrial claim.[1]  Dr. Chatterjee issued a report opining that claimant has "a Class 2, mild impairment, equivalent to a 19% [whole person impairment] due to her allowed condition of Recurrent Depressive Psychosis Severe."

{¶ 7}   On January 21, 2015, a commission SHO conducted a hearing and subsequently issued an order granting PTD compensation to claimant based on the report of Dr. Bond.  The SHO allocated the PTD award among the three industrial claims as follows: "78% is allocated to claim number 07-350194; 13% is allocated to claim number 04-800300; and 9% is allocated to claim number 01-865473."   The SHO stated the allocation was based on the reports of Drs. Bond and Chatterjee.

{¶ 8}   Penske subsequently filed the instant original action, requesting this court issue a writ of mandamus compelling the commission to vacate its order granting PTD compensation to claimant and to find either that claimant was not entitled to PTD compensation or, in the alternative, that claimant's entire PTD compensation award be allocated to the 2007 claim.  Subsequent to the initial briefing schedule, Penske withdrew its challenge regarding whether claimant was entitled to PTD compensation, and the magistrate issued an order striking the previously filed briefs of relator and respondents.

{¶ 9}   Following a revised briefing schedule, the magistrate issued a decision concluding that: "(1) the SHO abused his discretion in relying in part on the report of Dr. Chatterjee to allocate the PTD award among the three industrial claims, (2) there is no evidence in Dr. Bond's report to support the allocation of 9 percent of the award to the

---

[1] Penske notes that the report of the magistrate states that Dr. Chatterjee examined claimant only for the allowed psychological condition in the "2004" claim. (Appended Mag. Decision at ¶ 29.) Penske argues that the statement is in error, as the record indicates Dr. Chatterjee examined claimant for the allowed psychological condition in the 2007 claim.  We agree with Penske that the finding of fact referencing "2004" is incorrect.

2001 claim, and (3) there is evidence in Dr. Bond's report to support an unspecified allocation of the award to the 2004 claim." (Appended Mag. Decision at ¶ 49.)

{¶ 10} We first address similar objections raised by both the commission and Penske challenging the magistrate's conclusion that the commission abused its discretion in relying on the report of Dr. Chatterjee in determining the allocation of the PTD award among the three claims. In reaching that conclusion, the magistrate noted that the SHO relied exclusively on the report of Dr. Bond to support a finding that claimant was unable to engage in any sustained remunerative employment. The magistrate further determined: "The presumption is that the commission rejected the report of Dr. Chatterjee. * * * Therefore, it is inconsistent for the commission to rely on Dr. Chatterjee's report in determining the allocation of the award." (Appended Mag. Decision at ¶ 56.)

{¶ 11} Noting that Dr. Chatterjee only evaluated claimant's psychological condition and did not address her physical conditions, the commission argues that the fact it did not specifically rely on the report of Dr. Chatterjee to support the PTD determination (on the basis of the allowed physical conditions) does not also mean it rejected that report or the effect of claimant's allowed psychological condition. Rather, the commission contends, it was not error for the SHO to have found claimant permanently and totally disabled based on the physical conditions while still relying on the report of Dr. Chatterjee as to the impairment caused by the allowed psychological condition in determining the allocation of PTD compensation among the different claims.

{¶ 12} In addition to the above contentions of the commission, both the commission and Penske argue that no party to this case objected to the inclusion of Dr. Chatterjee's report as evidence for the allocation of PTD. Specifically, it is asserted, while the report of Dr. Chatterjee only dealt with the psychological condition related to the 2007 claim, the employer under that claim (TQ Logistics) did not object to the allocation of 78 percent of the award to its claim; further, it is noted, while Penske challenged the allocation of the PTD awards with respect to the 2001 and 2004 claims based on the report of Dr. Bond, Penske raised no objection with respect to the report of Dr. Chatterjee.

{¶ 13} In general, "[t]he failure to raise an issue before the commission or the magistrate waives the issue in a mandamus action." *State ex rel. Ohio State Univ. v. Indus. Comm.,* 10th Dist. No. 06AP-1028, 2007-Ohio-3733, ¶ 3. On review, we agree with

the commission and Penske that no party to the action raised the issue of whether the commission was precluded from relying on the report of Dr. Chatterjee in determining the allocation of the PTD award among the three claims. We further agree with the commission and Penske that the magistrate erred in addressing an issue not raised in mandamus. Accordingly, without passing judgment on whether the magistrate's analysis was correct, we find that any issue as to whether the commission abused its discretion in relying on the report of Dr. Chatterjee in determining the allocation of the PTD award has been waived. We therefore decline to adopt that portion of the magistrate's decision, and we sustain the commission's first objection and Penske's sole objection.

{¶ 14} We next consider the remaining two objections by the commission challenging the magistrate's determinations regarding the SHO's allocation of the PTD award with respect to the 2001 and 2004 claims. As to the 2001 claim, the magistrate found no evidence in the report of Dr. Bond to support the SHO's allocation of 9 percent of the PTD award to that claim.

{¶ 15} The commission contends that the magistrate reweighed the evidence in order to reach that determination. Specifically, the commission argues there is evidence in Dr. Bond's report that claimant continues to experience multiple cervical spine complaints related to both the 2001 claim and the 2007 claim; the commission maintains it was not an abuse of discretion for the SHO to allocate 9 percent of the PTD award to the 2001 claim (involving only a cervical strain), while assessing 78 percent of the PTD award to the 2007 claim (involving multiple surgeries).

{¶ 16} In response, Penske observes that certain conditions overlap body parts between the claims, including the 2001 claim for cervical strain and the 2007 claim for neck sprain and disc bulge. According to Penske, Dr. Bond's report fails to separate the 2001 cervical strain from the more serious and overlapping conditions in the 2007 claim. Penske notes that the 2007 claim resulted in five surgical procedures and argues there is no evidence of any significant treatment resulting from the 2001 cervical strain. Rather, Penske contends, the only evidence in Dr. Bond's report as to residual impairment attributable to the 2001 claim is the statement that claimant was off work for six weeks as a result of the 2001 claim, and that she returned to work "with no [sequela]."

{¶ 17} We find unpersuasive the commission's contention that the magistrate reweighed the evidence with respect to the 2001 claim. The magistrate, noting that the 2001 claim was allowed only for "cervical strain," found no indication from the report of Dr. Bond that claimant was impaired in any way by the cervical strain in that claim. The magistrate also addressed the commission's argument that the claimant had been awarded 6 percent permanent partial disability ("PPD") as to the 2001 claim, noting that the SHO's order does not state reliance on the 6 percent PPD award. Under Ohio law, "a permanent total disability is not measured numerically but is instead based on the claimant's ability to engage in sustained remunerative employment." *State ex rel. Hay v. Indus. Comm.,* 52 Ohio St.3d 99, 100 (1990). On consideration of the record, we agree with the magistrate's determination that the report of Dr. Bond fails to indicate the 2001 claim contributed to claimant's PTD, and we therefore find no error with the magistrate's conclusion that the evidence does not support the commission's allocation of 9 percent of the PTD award to the 2001 claim.

{¶ 18} The commission also contends the magistrate erred in finding the SHO's allocation of 13 percent of the PTD award to the 2004 claim constituted an abuse of discretion. With respect to the 2004 claim, the magistrate noted that Dr. Bond "did not assign a whole person impairment rating as to each of the allowed physical conditions," but instead "examined by body part or body area." (Appended Mag. Decision at ¶ 61.) Further, while Dr. Bond assigned a 7 percent whole person impairment to the left shoulder injuries, the magistrate observed that the left shoulder injuries included allowed conditions from both the 2004 and 2007 claims, and that Dr. Bond also assigned a 5 percent impairment for "lumbosacral sprain/strain" for the 2004 claim. The magistrate, while finding "there is evidence from Dr. Bond's report of medical impairment in the 2004 claim," further determined: "[W]e cannot conclude that [claimant] has a 12 percent impairment (7 percent and 5 percent) to support the 13 percent allocation to the 2004 claim. We simply do not know what the percentage of impairment is in the 2004 claim for the left shoulder." (Appended Mag. Decision at ¶ 66.)

{¶ 19} In general, matters affecting the rights and obligations of a claimant or employer, including matters regarding the allocation of a PTD award, "merit an explanation sufficient to inform the parties and potentially a reviewing court of the basis

for the commission's decision." *State ex rel. Yellow Freight Sys. v. Indus. Comm.,* 71 Ohio St.3d 139, 142 (1994). On review, we agree with the magistrate's analysis that the record contains some evidence to support an allocation of the PTD award to the 2004 claim, but that the order does not adequately explain what percentage of impairment is attributable to the 2004 claim with respect to the left shoulder. Thus, we conclude that this cause should be remanded to the commission "for further consideration of the allocation question." *Id.* at 143.

{¶ 20} Based on the foregoing, we sustain the commission's first objection and Penske's sole objection, and we overrule the commission's remaining two objections. Accordingly, we adopt the magistrate's findings of fact except to the extent noted, and we adopt the magistrate's conclusions of law except to the extent those conclusions are inconsistent with our disposition of the commission's first objection and Penske's sole objection. In accordance with the magistrate's recommendation, we issue a writ of mandamus ordering the commission to vacate that portion of the SHO's order that allocates the PTD award among the three industrial claims, and to enter an amended order with respect to the allocation of the PTD award.

*Objections sustained in part and overruled in part; writ of mandamus granted.*

KLATT and BRUNNER, JJ., concur.

———————————

# APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel.                                       :
Penske Truck Leasing Company, LP,

                                           :

        Relator,

                                           :

v.                                                                                        No. 15AP-223

                                           :

Industrial Commission of Ohio,                             (REGULAR CALENDAR)
Deborah J. Fizer, and TQ Logistics,            :

        Respondents.                                   :

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on April 26, 2016

---

*Scheuer Mackin & Breslin, LLC, J. Kent Breslin,* and *Eric A. Rich,* for relator.

*Michael DeWine,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

*Randall Rummell,* for respondent Deborah J. Fizer.

---

### IN MANDAMUS

{¶ 21} In this original action, relator, Penske Truck Leasing Company, LP ("Penske" or "relator"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the portion of its order that allocates 13 percent of an award of permanent total disability ("PTD") compensation to relator in claim No. 04-800300 and 9 percent of the award to relator in claim No. 01-865473, and to enter an amended order that appropriately allocates the PTD award based solely on the

report of Jess G. Bond, M.D., on which the commission exclusively relied in granting PTD compensation.

<u>Findings of Fact</u>:

{¶ 22} 1. On November 10, 2001, respondent Deborah J. Fizer ("claimant" or "Fizer") sustained an industrial injury while employed as a truck driver with Penske, a self-insured employer under Ohio's workers' compensation laws.  While unloading a trailer, Fizer was struck on the head by a falling box.  The industrial claim (No. 01-865473) is allowed for "cervical strain."  Fizer has been awarded 6 percent permanent partial disability ("PPD") in the claim.  This claim may be referred to as the 2001 claim.

{¶ 23} 2. On January 2, 2004, Fizer sustained her second industrial injury while employed as a truck driver with Penske.  While unloading a truck, Fizer injured her left shoulder and lower back when she reached out her arm to stop a box from striking her.  The industrial claim (No. 04-800300) is allowed for "lumbosacral sprain and strain; left rotator cuff sprain and strain, adhesive capsulitis, left shoulder."  Eleven percent PPD has been paid in the 2004 claim.

{¶ 24} 3. On June 20, 2007, Fizer sustained an industrial injury while employed as a truck driver for TQ Logistics, a state-fund employer.  The industrial claim (No. 07-350194) is allowed for "sprain of neck; sprain left shoulder; disc bulge with compression at the C5 through C7 disc levels; recurrent depressive psychosis-severe."

{¶ 25} 4. On January 3, 2014, Fizer filed an application for PTD compensation.

{¶ 26} 5. On August 8, 2014, at the commission's request, Fizer was examined by Dr. Bond for all the allowed physical conditions of all three industrial claims.  Dr. Bond specializes in occupational medicine.  In his four-page narrative report dated August 11, 2014, Dr. Bond states:

### Chief Complaint

Ms. Fizer, a 64-year-old woman, was examined by me on the date noted above concerning the chief complaint of neck pain, left shoulder pain, and lower back pain, with numbness down her left arm.

### History of Present Condition/Current Symptoms

Ms. Fizer, who was employed as an Over-The-Road Truck Driver, stated that in 2001 she was unloading her truck

trailer and a box fell overhead and struck her in the head/neck. She said that she suffered a neck sprain and was off work for about 6 weeks and was treated with physical therapy. She said that she returned to work with no sequella. She said that around 2004-2005 she was unloading freight when a box of liquid laundry detergent fell from the stack. She said that she tried to stop the fall and injured her left shoulder. She said that she left work due to this injury and had a shoulder MRI performed that reported a torn rotator cuff. She said that she underwent 2 open rotator cuff repairs, and then had an arthroscopic left shoulder surgery for a frozen shoulder. She said that she attended physical therapy and then returned to work. She said that around this point in time she changed her job from both driving and unloading to just driving, which was better for her shoulder. She said that she and her husband, who also drives a truck, worked together hauling steel. She said that in 2007 she was driving the truck without a load when a 16-year-old girl sideswiped her truck cab with her car in Buffalo, NY. She said that she was able to avoid a serious crash situation, however she said that she noticed severe neck pain following the incident. She said that by the next morning her neck/shoulders and lower back were very sore. She said that she also developed weakness down her left arm into her left hand. She said that she last worked on 06/19/2008 due to her symptoms. She said that in 2009 she underwent a cervical fusion surgery. She said that this procedure did not help. She said that she had a permanent spinal stimulator surgically implanted for her neck condition; however, she said that she recently turned it off due to shock-like sensations she has been having at the battery pack implantation site. She said that even when the device was working properly, it was not providing sufficient relief for her cervical pain. She said that she is going to be seen next week about the faulty device. She said that trigger point injections do seem to help. She said that she tries to avoid taking Norco and/or Zanaflex for her symptoms due to the side effects associated with these medications. She said that she cannot drive a car when taking such medications. She said that she cannot use her left arm to reach over chest height. She said that she continues to have left arm numbness and tingling when she awakes from sleep. She said that she tries to stay as active as possible, but she is limited in what she can do around the house. She said that if she overdoes activities involved with housework, she will pay for it with neck stiffness and pain the next day.

**Past Medical/Surgical History**

Ms. Fizer, who is right upper extremity dominant (right-handed), stated that she has hypertension and hypothyroidism. She said that she takes Synthroid and Maxzide. She said that she has depression and takes Pristiq, Ambien, and Ativan for that condition and for insomnia.

**Employment History**

Ms. Fizer was employed as an Over-The-Road Truck Driver for 17 years. She said that at the time she last worked on 06/19/2008 she had reached a point w[h]ere she was having difficulty turning her head to use the truck mirrors. She said that her husband was doing most of the driving. She said that she tried resting for a while, but she said that was not enough to allow her to drive comfortably. She said that her husband continues to drive and that she now has to stay at home.

**Physical Examination**

This is a 64-year-old, 245 pound, 64-inch-tall individual (calculated BMI = 42) who appears to look her stated age.

Examination of the cervical area (neck) revealed a well-healed 7 cm long scar over the left anterior neck, and a well-healed 6 cm surgical scar over the posterior aspect of the neck. There were no signs of upper back or neck muscular atrophy. There was tenderness noted over the entire cervical paravertebral musculature with moderate pressure. Muscle spasms (guarding) were not noted. Spurling's test was positive with neck extension and rotation of the chin toward the right upper extremity, resulting in left arm symptoms. Active range of cervical motion was limited in all directions of motion due to complaints of neck pain.

Examination of the left shoulder revealed no muscular atrophy. There was a well-healed 9 cm long surgical scar noted over the anterior aspect of the left shoulder. The right upper arm measured 35 cm at a point of maximum circumference, and the left upper arm measured 36 cm in circumference. Active range of motion at the left shoulder joint was as follows: flexion to 90 out of 180 degrees, extension to 50 out of 50 degrees, abduction to 90 out of 180 degrees, adduction to 50 out of 50 degrees, internal rotation to 70 out of 90 degrees, and external rotation to 70 out of 90

degrees. Muscle strength testing of the individual muscle groups comprising the left shoulder was noted to be normal.

Examination of the upper extremities revealed no muscular atrophy. The right forearm circumference measured 27 cm, and the left measured 26 cm. Deep tendon reflex testing revealed reduced triceps, biceps, and brachioradialis responses in both upper extremities. Muscle strength testing (wrist flexor and extensor strength, and hand pincer grip and clenched grip strength) revealed normal strength (grade 5/5 - normal active movement against gravity with full resistance), except with resisted and opposed bilateral thumbs to digits 4 and 5 in both hands which revealed grade 4/5 muscle strength (active movement against gravity and some resistance). Sensory testing to sharp touch (Semmes-Weinstein monofilament testing) revealed normal sensation (green filament) at all of the digits of both upper extremities, however testing, revealed decreased sensation in the C8 dermatome in the left forearm and in the C4 dermatome located on the right upper chest well.

Examination of the lower back revealed increased lumber lordosis. There was a well-healed 8 cm surgical scar noted over the left lower lumbar paravertebral region at the subcutaneous battery pack site of the spinal cord stimulator. There was tenderness noted at this site as well with moderate pressure. Muscle spasms or guarding were not noted. There was no iliosacral joint tenderness. There was no sciatic notch tenderness. Active range of motion was limited in all directions of movement due to complaints of low back stiffness and discomfort.

Examination of the lower extremities revealed no signs of muscular atrophy. Thigh circumference, measured 10 cm above the patella with the knee fully extended, was 55 cm on the right and 55 cm on the left. The maximal calf circumference on the right was 42 cm, and on the left was 41 cm in circumference. Straight leg raising in the sitting position was noted to be negative. Deep tendon reflex testing revealed absent bilateral knee and ankle responses. Muscle strength testing revealed normal strength (grade 5/5 - normal active movement against gravity with full resistance) in both lower extremities. Sensory testing to sharp touch revealed normal sensation in both lower extremities.

**Review of the Medical Records**

I have reviewed and used all of the available medical documentation provided to me by the Industrial Commission as the basis for my opinion.

X-ray, MRI, CT, Myelogram, Functional Capacity Evaluation, surgical reports, and other medical records were reviewed and noted.

**Discussion/Impact on Activities**

On examination Deborah J. Fizer had objective findings of decreased range of motion at the cervical and lumbar spine and at the left shoulder. There were findings consistent with primarily a left upper extremity radiculopathy, with essentially normal neurological findings in the lower extremities. It is my medical opinion that she has limited physical abilities regarding head, left shoulder and lower back movement, which limits her ability to reach with her left arm or perform overhead work, and limits her ability to bend, lift, pull, and push.

**Opinion**

**[One]** It has been determined that the Injured Worker has reached a treatment plateau that is static or well stabilized, at which no fundamental, functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitation procedures (MMI). In my medical opinion the Injured Worker remains at MMI for the allowed conditions of: *Sprain of neck; sprain left shoulder; disc bulge with compression at the C5 through C7 disc levels; cervical strain; lumbosacral sprain/strain; left rotator cuff sprain/strain; adhesive capsulitis left shoulder*. Therefore, based on the *AMA's Guide to the Evaluation of Permanent Impairment,* Fifth edition, and with reference to the Industrial Commission Medical Examination Manual, it is my estimation of permanent impairment percentage for:

The claim allowances:        Sprain of neck; disc bulge with compression at the C5 through C7 disc levels; cervical strain

Disallowed Conditions:        Disc bulge with compression at the C3-C4 disc level

> The Injury Model utilizing Diagnosis-Related-Estimates (DRE) for the cervical spine (Table 15-5, page 392), which equated to a DRE Category (IV), which equated to a whole person permanent impairment of: 25%.
>
> The claim allowances:        Sprain left shoulder; left rotator cuff sprain/strain; adhesive capsulitis left shoulder
>
> The Range of Motion Model at the left shoulder, utilizing active range of motion measurements: flexion/extension (figure 16-40, page 476), abduction/adduction (figure 16-43, page 477), and internal/external rotation (figure 16-46, page 479), which equated to a whole person permanent impairment of: 7%.
>
> The claim allowances:        Lumbosacral sprain/strain
>
> The Injury Model utilizing Diagnosis-Related-Estimates (DRE) for the lumbosacral spine (Table 15-3, page 384), DRE Category (II), which equated to a whole person permanent impairment of: 5%.
>
> All of the above whole person permanent impairment percentages were combined (using the Combined Values Chart) to determine a **34%** whole person impairment rating for all of the allowed conditions of these claims.
>
> **[Two]** The Injured Worker is capable of performing work in the "Sedentary Work" category, and is further restricted to no overhead work, no reaching with her left arm above chest height, and to keep work requiring turning of the head to a minimum. The Physical Strength Rating form has been completed * * *. Disability factors such as age, education, and work/training/experience were not taken into consideration.

(Emphasis sic.)

{¶ 27} 6. On August 8, 2014, Dr. Bond completed a form captioned "Physical Strength Rating." On the form, Dr. Bond indicated by his mark that claimant is capable of sedentary work.

{¶ 28} In the space provided, in his own hand, Dr. Bond wrote: "No overhead work, no reaching with [left] arm above chest height, limit head turning to a minimum."

{¶ 29} 7. Earlier, on August 7, 2014, at the commission's request, Fizer was examined by psychologist Marian Chatterjee, Ph.D. Dr. Chatterjee examined only for the allowed psychological condition in the 2004 industrial claim. In a five-page narrative report, Dr. Chatterjee opines that Fizer has "a Class 2, mild impairment, equivalent to a 19% WPI due to her allowed condition of Recurrent Depressive Psychosis Severe."

{¶ 30} On a form captioned "Occupational Activity Assessment, Mental & Behavioral Examination," Dr. Chatterjee marked a box aside the preprinted statement: "This Injured Worker is capable of work with the limitation(s)/modification(s) noted below."

> In the space provided, Dr. Chatterjee wrote:
>
> Psychologically she would be limited to low stress, simple and structured work that did not involve dealing with the general public.

{¶ 31} 8. Following a January 21, 2015 hearing, a staff hearing officer ("SHO") issued an order awarding PTD compensation to Fizer based exclusively on the report of Dr. Bond. Based on Dr. Bond's report, the SHO found that Fizer "is unable to engage in sustained remunerative employment as a result of the allowed physical conditions in her above claims."

{¶ 32} In the order, the SHO explained how he concluded from Dr. Bond's report that Fizer is unable to perform sustained remunerative employment:

> The restrictions placed by Dr. Bond persuade the Staff Hearing Officer that this Injured Worker does not have the retained physical functional capacity to perform work even at the sedentary level. Sedentary work, as defined above, requires the Injured Worker to be able to engage in frequent carrying, lifting, pushing, pulling, or otherwise moving objects. In the body of his report, Dr. Bond explains that this Injured Worker has limitations in the following areas: in head movement, left shoulder movement, lower back movement, being able to reach with her left arm, performing overhead work, bending, pushing, and pulling. He specifically precludes activity involving overhead working, reaching with left arm above chest height, and limited head turning. The Staff Hearing Officer concludes that Dr. Bond's findings support the argument that the Injured Worker does not hove the ability to engage in any work as this Injured Worker does not possess the functional physical abilities to

perform many of the essential criteria of even sedentary work.

{¶ 33} Then, the SHO apportioned the PTD award among the three industrial claims offering the following explanation:

> In awarding permanent total disability compensation, the Staff Hearing Officer apportions the award among this Injured Worker's three separate worker's compensation claims as follows: 78% is allocated to claim number 07-350194; 13% is allocated to claim number 04-800300; and 9% is allocated to claim number 01-865473. This allocation is based upon the 08/08/2014 report of Dr. Jess Bond, and the 08/07/2014 report of Dr. Marian Chatterjee, Ph.D.

{¶ 34} 9. On March 4, 2015, the three-member commission mailed an order denying relator's January 30, 2015 request for reconsideration.

{¶ 35} 10. On March 26, 2015, relator, Penske Truck Leasing Company, LP, filed this mandamus action.

{¶ 36} 11. On May 18, 2015, the parties, through counsel, filed the stipulated record pursuant to the magistrate's scheduling order.

{¶ 37} 12. On June 2, 2015, relator filed its brief.

{¶ 38} 13. On June 17 and July 1, 2015, respondents Fizer and the commission respectively filed their briefs.

{¶ 39} 14. On July 8, 2015, relator filed its reply brief.

{¶ 40} 15. In its June 2, 2015 brief and its July 8, 2015 reply brief, relator challenged the commission's PTD award and its allocation of the award.

{¶ 41} 16. On October 28, 2015, oral argument was scheduled before the magistrate. Prior to the time that oral argument was to begin, relator's counsel asked for an informal conference among counsel and the magistrate. At the conference, relator's counsel indicated that his client wants to "take off the table" the challenge to the PTD award. Elimination of relator's challenge to the PTD award prompted counsel for the commission to seek time to discuss the matter with her client.

{¶ 42} 17. In light of the new developments, the magistrate continued the oral argument that had been scheduled for October 28, 2015.

{¶ 43} 18.  On November 13, 2015, the commission filed a status report in which the commission declined any voluntary remand of this matter.

{¶ 44} 19.  On November 17, 2015, the magistrate issued an order striking the briefs of relator and respondents previously filed in this action.  However, the stipulation of evidence was not stricken.

{¶ 45} 20.  In that order, the magistrate issued a new briefing schedule.  The parties responded with the filing of new briefs.  Relator's brief was filed November 30, 2015; the brief of the commission was filed December 16, 2015; Fizer's brief was filed December 9, 2015; and relator's reply brief was filed December 23, 2015.

{¶ 46} 21.  On March 30, 2016, oral argument was held before the magistrate based upon the stipulated record and the new briefs filed by the parties pursuant to the magistrate's order of November 17, 2015.

{¶ 47} 22.  Accordingly, this matter is now before the magistrate for his written decision.

Conclusions of Law:

{¶ 48} Several issues are presented:  (1) did the SHO abuse his discretion in relying in part on the report of Dr. Chatterjee to allocate the award among the three industrial claims when the SHO's award is premised exclusively on the report of Dr. Bond, (2) is there some evidence in Dr. Bond's report to support the allocation of 9 percent of the award to the 2001 claim that is only allowed for "cervical strain," and (3) is there some evidence in Dr. Bond's report to support the allocation of 13 percent of the award to the 2004 claim?

{¶ 49} The magistrate finds:  (1) the SHO abused his discretion in relying in part on the report of Dr. Chatterjee to allocate the PTD award among the three industrial claims, (2) there is no evidence in Dr. Bond's report to support the allocation of 9 percent of the award to the 2001 claim, and (3) there is evidence in Dr. Bond's report to support an unspecified allocation of the award to the 2004 claim.

{¶ 50} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

## Basic Law

{¶ 51} In *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.,* 71 Ohio St.3d 139 (1994), the Supreme Court of Ohio applied the principles set forth in *State ex rel. Noll v. Indus. Comm.,* 57 Ohio St.3d 203 (1991), to the commission's practice of allocating PTD awards involving multiple industrial claims. The *Yellow Freight* court explained:

> *All* matters affecting the rights and obligations of the claimant or employer merit an explanation sufficient to inform the parties and potentially a reviewing court of the basis for the commission's decision.

(Emphasis sic.) *Id.* at 142.

{¶ 52} The basis for the allocation must be consistent with the medical evidence relied on in support of the award. *State ex rel. Hay v. Indus. Comm.,* 52 Ohio St.3d 99 (1990) (The commission's reliance upon the reports of two doctors who attributed disability exclusively to the 1975 claim required the commission to allocate the PTD award wholly to the 1975 claim even though the commission argued that a partial allocation to the 1971 claim was supported by a prior 35 percent PPD.) *State ex rel. Erieview Metal Treating Co. v. Indus. Comm.,* 10th Dist. No. 04AP-447, 2005-Ohio-1154, ¶ 30-32, affd. 109 Ohio St.3d 147, 2006-Ohio-2036.

{¶ 53} The commission's allocation of a PTD award must be supported by some evidence on which it relied. *State ex rel. Cafaro Mgt. Co. v. Indus. Comm.,* 10th Dist. No. 12AP-638, 2013-Ohio-5104, ¶ 4-5. However, the commission need not specifically justify the exact figure allocated to each claim. *Id.* at ¶ 11 (The report of Dr. Patel is some evidence supporting a 25 percent allocation to the 2008 claim even though the commission did not explain the exact figure allocated.).

## Dr. Chatterjee's Report

{¶ 54} As earlier noted, the commission, through its SHO, exclusively relied on the report of Dr. Bond to support its determination that Fizer is unable to engage in any sustained remunerative employment as a result of the allowed physical conditions of the claims. The SHO's order of January 21, 2015 does not state reliance on the report of Dr. Chatterjee in support of the finding that Fizer is unable to perform sustained remunerative employment.

{¶ 55} Rather, the SHO states reliance on the report of Dr. Chatterjee only in support of the allocation of the PTD award among the three industrial claims.  It can be noted that the psychological claim allowance for which Dr. Chatterjee examined is an allowance of the 2007 claim which is not one of the two claims against relator, i.e., the 2001 and 2004 claims.

{¶ 56} The presumption is that the commission rejected the report of Dr. Chatterjee as to the PTD award itself.  *State ex rel. Lovell v. Indus. Comm.*, 74 Ohio St.3d 250 (1996).  Therefore, it is inconsistent for the commission to rely on Dr. Chatterjee's report in determining the allocation of the award.  *Hay.*  The magistrate concludes that the commission abused its discretion in relying on Dr. Chatterjee's report in determining the allocation of the PTD award.

### Allocation of 9 Percent to the 2001 Claim

{¶ 57} There is no evidence in the report of Dr. Bond to support the commission's allocation of 9 percent of the PTD award to the 2001 claim or to support a lesser percentage.  As earlier noted, the 2001 claim is allowed only for "cervical strain."  Nowhere in his report does Dr. Bond find that Fizer is medically impaired in any way by the cervical strain in the 2001 claim.

{¶ 58} However, the commission points here to the 6 percent PPD award in the 2001 claim.  According to the commission, "[t]his was recognition that this condition and this injury left Fizer with some residual in terms of pain, suffering or some limitations/restrictions in her neck from the 2001 claim on a *permanent* basis."  (Emphasis sic.)  (Commission's Brief, 15-16.)

{¶ 59} The problem with the commission's position is that the SHO's order of January 21, 2015 does not state reliance on the 6 percent PPD award.  Therefore, the PPD award provides no evidence to support the allocation.  *Hay.*

{¶ 60} In the magistrate's view, that there is no evidence to support the 9 percent allocation to the 2001 claim flaws the allocations to the other claims.  At this point in the analysis, we have an improper reliance on Dr. Chatterjee's report, and an allocation to the 2001 claim unsupported by any evidence from Dr. Bond's report.

### The Allocation of 13 Percent to the 2004 Claim

{¶ 61} It can be observed that Dr. Bond did not assign a whole person impairment rating as to each of the allowed physical conditions in the claim. Rather, Dr. Bond examined by body part or body area. This creates difficulty in determining whether a 13 percent allocation to the 2004 claim is supported by some evidence.

{¶ 62} Dr. Bond opined that the left shoulder injuries "equated to a whole person permanent impairment of: 7%," but Fizer has a left shoulder injury in both her 2004 and 2007 claims. That is, her 2007 claim is allowed for "sprain left shoulder." Her 2004 claim is allowed for "left rotator cuff sprain and strain, adhesive capsulitis, left shoulder."

{¶ 63} Thus, Dr. Bond's finding of a 7 percent whole person permanent impairment involves left shoulder injury as to both the 2004 and 2007 claims.

{¶ 64} It can be further noted that Dr. Bond assigns a 5 percent whole person permanent impairment to the "lumbosacral sprain/strain," which is an allowed condition of the 2004 claim.

{¶ 65} In short, for the 2004 claim, we have from Dr. Bond a 5 percent impairment for "lumbosacral sprain/strain" and a 7 percent impairment for the left shoulder injury that unfortunately includes allowed conditions from both the 2004 and 2007 claims.

{¶ 66} Clearly, there is evidence from Dr. Bond's report of medical impairment in the 2004 claim. The problem is that we cannot conclude that Fizer has a 12 percent impairment (7 percent and 5 percent) to support the 13 percent allocation to the 2004 claim. We simply do not know what the percentage of impairment is in the 2004 claim for the left shoulder.

### Conclusion

{¶ 67} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate that portion of its SHO's order of January 21, 2015 that allocates the PTD award among the three industrial claims, and to enter an amended order that allocates the PTD award in a manner consistent with this magistrate's decision.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).